Welcome to the Fourth Circuit. We have four cases on for hearing this morning. The first is 22-4317, United States v. Sherifi. Mr. McBeth? Thank you and good morning, Your Honors. My name is Colin McBeth and I represent the appellant Hysen Sherifi. Your Honors, at resentencing in this case, Mr. Sherifi argued the district court should vary downward because the terrorism enhancement in Section 3A.1.4 of the guidelines skews the guidelines range, improperly ratcheting up the defendant's sentencing range in a way that fails to account for the defendant's individual characteristics and conduct. Yet the district court did not acknowledge or respond to this argument, much less explain why it found that argument unpersuasive. Under this court's well-established precedent, that was error. This court has repeatedly held that a district court must first address the party's non-frivolous arguments in favor of a particular sentence, and second, if the court rejects those arguments, it must explain why. A district court's general attentiveness at sentencing is not sufficient. As this court held in United States v. Webb, it is not enough that the district court, quote, listened intently to a defendant's sentencing presentation. Rather, the court is required to give, quote, specific attention to a non-frivolous argument, as the court said in United States v. Lewis. That's because, as Webb explained, providing the defendant with ample opportunity to present arguments and properly considering those arguments are separate requirements of procedural reasonableness. Here, Mr. Sherifi's arguments about the terrorism enhancement were certainly non-frivolous. Numerous federal courts across the country have recognized that the terrorism enhancement is, quote, deeply flawed, and, quote, subversive of the mission of the guidelines, which is to address with some particularity the unique facts of a given case. Multiple courts have explained the enhancement is flawed in at least two ways. First, the enhancement increases- Mr. McBeth, sorry to interrupt, but, so this case was up on rehearing. Was this issue raised during the first sentencing? This particular argument about the enhancement, no, it was not. Mr. Sherifi contested the enhancement applied, but not this argument. So when you say he contested that the enhancement applied, because? He argued that on the facts of the case, so in other words, the government had not shown that his conduct showed the enhancement applied, that he was intending to promote a federal crime of terrorism which had the goal of retaliating against government conduct. It was a factual challenge to whether the enhancement applied or not. So on resentencing, you know, I get your point that perhaps the judge didn't cite chapter and verse, Judge Flanagan, I think it was, chapter and verse with respect to the argument that was being made, but wasn't the bottom line conclusion, her bottom line conclusion that a life sentence was too long under the circumstances, wasn't that an acknowledgment, albeit perhaps not as direct as you would like it to be, that the enhancement simply didn't fit the facts of this case? So I don't think so, your honor, because Mr. Sherifi in this case, at resentencing, made multiple arguments for why both a life sentence and a 540 month sentence, which was the original sentence, were too long. It was about this argument about the enhancement, but also it was about the fact that he said he had a minor role in the offense, the other defendants got lesser sentences, his post-sentencing rehabilitation. All of those arguments were arguments for why the sentence should come down from 540 months. And so the fact that the court went below 540 doesn't necessarily mean that it considered each of those arguments. In fact, the court, when it was explaining why it was imposing a lesser sentence, the only things it mentioned were the fact that two counts had been vacated and Mr. Sherifi's post-sentencing conduct in BOP. That's what it talked about. So we know the court considered those arguments, but that doesn't mean that the court wouldn't have gone lower if it had considered another additional argument in favor of a variance. So I think that... Your point is that you think that the terrorism enhancement basically distorts the structure of the guidelines? Correct, Your Honor. It's un-individualized. If that's your point, why isn't that an argument to be made before the Sentencing Commission? Well, it is an argument to be made in front of the Sentencing Commission, but the Supreme Court recognized in the Kimbrough case from, I think it was 2007, that... No, it seemed to me that you were making a structural argument about the fact that the terrorism enhancement was too steep and that it distorted the structure of the guidelines, and, you know, fair enough if that's what you think. But that seems to be something you would bring before the body that had a chance to correct that distortion, which is essentially the Sentencing Commission. It's not up to us. Well, I mean, the Supreme Court, again, in the Kimbrough case, recognized that defendants can raise policy-based arguments at sentencing asking a district court to recognize that a particular guideline, in that case it was the 100 to 1 crack-cocaine ratio, is not sound. It represents bad policy. But quite above and beyond that, why isn't this a sort of perfect case for the application of the Sentencing Commission? Why isn't this an application of the terrorist enhancement? Because he was colluding with one Mr. Boyd to go over to Kosovo and to commit jihad against all non-Muslims. And if that isn't terrorism, I'm sort of hard-pressed to know what is. So, again, the argument in this case is not that on the facts the enhancement doesn't apply. This Court already held that it did in the direct appeal, and we weren't challenging that. We were simply saying that the guideline fails to differentiate between the very wide spectrum of people who commit terrorism enhancements because it's a very blunt instrument. It automatically places a defendant in criminal history category 6 and adds 12 levels, which is close to as many as any guideline in the entire guidelines book. And so several of the cases that we cite in our brief, including I think the Nayar case, the Gary case, the Jemayev case, they talk about how treating a defendant who actually committed a terrorist act that harmed people like blowing up a building, treating those people the same as other defendants who don't do that is not necessarily a sound sentencing scheme. Now, of course, the District Court doesn't have to agree with that. The District Court could hear this argument and decide I'm not persuaded. I'm going to impose the same sentence anyway. But the point is purposes of procedural reasonableness, the argument is certainly non-frivolous, as these courts that I just mentioned have said. They've said this is a material distinction. But Mr. McBeth, you would agree that there's no one-size-fits-all, right? That the District Court can acknowledge an argument in a variety of different ways? Yes. Okay. So the government's point is that the court acknowledged the argument in two ways. First, by indicating that the enhancement drove both the criminal history and the range and then acknowledged that at bottom what the defendant was seeking was a variance because of the enhancement and because of all the other positive things that he had done while he had been imprisoned. And the court acknowledged all of that and granted a variance. So it did what the defendant suggested it would do, perhaps not in the way that you would have liked. But is that enough to send it back yet again? I think so, Your Honor, because variances are not all the same. So the government's argument assumes is that all variances are created equal. In other words, if the District Court had considered, let's say, three of Mr. Sharifi's arguments, it would have given the same sentence, the same variance as if it had considered five of his arguments. But the whole premise of this Court's procedural reasonableness case is that each individual argument a defendant makes can itself reduce the sentence or cause a variance, cause the District Court to vary. So the fact that the District Court varied doesn't mean it gave the same variance that it would have if it had considered this argument. But wait a minute. You're not suggesting that the court has to sort of mathematically calculate for this particular argument, he's going to get 10 months off for this one, so that's not right. No, I'm not saying that, Your Honor. What I'm saying is, as I read the transcript, the District Court acknowledged Mr. Sharifi's arguments about post-rehabilitation conduct and his behavior in BOP. And it said, based on that, I'm going to take 24 months off and vary down to 516. But if the court had also considered this additional argument about the terrorism enhancement, it's quite possible the District Court would have gone lower than that. So the fact that it gave some variance from its previous sentence doesn't necessarily mean that it gave the sentence it would have given if it had considered this additional argument. In other words, not all variances are the same. If a District Court, I mean, for instance, in the blue case, which we cite in our briefs, in that case, the defendant raised, I think it was eight arguments that this court identified. And the District Court did specifically address and acknowledge two of those arguments in the blue case and imposed a sentence. And the court said, even though it considered two, the sentence might have been lower if the District Court hadn't considered all eight of those arguments. So it's not enough to say, you know, the District Court considers certain arguments when other arguments might cause an additional reduction in the guidelines range. And in this case, there's just nothing specifically about this argument in the District Court's sentencing explanation. In fact, I think the fact that the District Court specifically did talk about the post-rehabilitation conduct, but not this other argument, is an indication that the court did not expressly consider it. What about the fact that the court acknowledged, according to the government anyway, in its brief, that because of the terrorism enhancement, quote, the guidelines slide, Mr. Sharifi, over to a criminal history level six and drive a lengthy sentence in that part. Isn't that an acknowledgment that there's somehow the enhancement skews the analysis? So I don't think so, because Mr. Sharifi's, again, this court's procedural reasonableness case law is pretty demanding. The District Court has to address a specific argument that the defendant makes. And the specific argument here was not that the terrorism enhancement creates lengthy sentences, because I think that's obvious to anyone who looks at it. But rather that it does so in a way that is not individualized, that lumps everybody in together and treats the least culpable and most culpable terrorism defendants exactly the same by adding 12 levels and putting someone in criminal history category six. And so the fact that it drives a lengthy sentence, lengthy is not necessarily unjustified. Sometimes lengthy sentences are unjustified. Right. And so the District Court in this case said just that and, you know, buried downward. Well, but the point is if the court did so against the backdrop of without considering our argument that the baseline, the sentencing guidelines baseline was distorted. So the court acknowledged it was high, excuse me, but it was high, but did not acknowledge that our argument that it only got so high in the first place because this guideline, which is unindividualized and represents, you know, unsound judgment as the panel put it, is what pushed it so high. So if the court had considered Mr. Shreethi's individual characteristics as well as the argument that the baseline was inflated inappropriately and that the court should basically start from a different baseline, a lower baseline, then I think it's probable the District Court might have given a lower sentence. Again, the District Court was not required to accept this argument. I'm sort of hard-pressed to see, just taking a step back, anything that's reversible here. This was a 17-day trial and your first claim on the Apprendi Era wants us to reverse a 17-day trial in which you had the opportunity, as far as I can see, to introduce all the evidence you wanted and the jury found against you and then there was a terrorism enhancement and a hate crime enhancement and why not? You have somebody, when you read the record here, he engaged in extensive planning to go over to Kosovo and assist the struggle against Ziad and to murder non-believers because of their faith and to support terrorist activity both abroad and at home and the planning here took place over quite a bit of time and it was quite extensive and he was given a chance at sentencing and trial to introduce his side of the story but so much of this stuff here is plain error and I can't understand how anybody's substantial rights would be affected and then you get to the fourth prong of all I know which is the question of whether the judicial system would be brought into disrepute by not recognizing the era and far from having the judicial system brought into disrepute, it seems to me that this whole proceeding, the way in which it was conducted, was a credit to the judicial system, not something that brought it into disrepute and I just don't see that this gets anywhere close to reversible error here. What the individual did according to the jury and according to the sentencing judge was simply to try to go and on the basis of religion or murder large numbers of his fellow human beings and you know every person deserves a good lawyer and I take my hat off to you for that but it is a hard case for you. So your honor the argument about certainly the Apprendi issue and the hate crime issue are unpreserved but the argument about the district court failing to consider the terrorism enhancement argument, that argument is unpreserved and we're not arguing here that this sentence was substantively unreasonable. What about the issue where the government's conceded plain error for you? You haven't even mentioned that. So as you said your honor the government has conceded plain error on that. I think we agree that the third prong of the Apprendi issue of plain error on Apprendi asks whether the evidence was overwhelming and uncontested. Even assuming the evidence was overwhelming it was not uncontested. Mr. Sharifi repeatedly at trial cross-examined witnesses to get out the point that there was no specific plan, there was no specific target, and so there's just no way that it could say the jury could say or this court can say it was uncontested that he intended to murder as opposed to kidnap or maim because he absolutely disputed that. And as for the fourth prong is post Leggins because Cotton, the Supreme Court's opinion, Cotton says the test at the fourth prong is whether the evidence is overwhelming and uncontroverted which is the same test this court. You say it's not uncontroverted because he went to trial? Well not just because he went to trial but during trial his attorney cross-examined witnesses in a way that brought out the fact that there was no specific plan. In other words, you were contesting everything. Correct, he was, yeah, he was, this is, but aren't you claiming that the sentence, I think it's count two, for 43 years is more than the statutory maximum? Correct, your honor. That the statutory maximum is 35 years? Correct. So what do you want, you want a reduction in that sentence from 43 years to 35 years? I think under Apprenti that's the the only, you know, the maximum permissible sentence. But why would we be doing it rather than the district court doing it? Well the district court would. But you, and the lawyers, both sides went up there, Judge Flanagan and nobody brought this up. Right, and I regret to tell you, your honor. I mean you blame them, you say it's invited error. No, the government says we invited error. No, they blame you. Right. They say it's invited error. Right, so invited error. I blame both of you. I mean it's clear. And your honor. You come up, you go on appeal with an Apprenti issue that nobody thought of, and say the guy got eight more years and the statute permitted. And I wish it had been preserved, but. That's the difference between maim and murder, right? Correct, maiming on one hand or murder and kidnapping on the other. We acknowledge it was unpreserved. Government admits, agrees it's plain error. I think we have the correct standard third prong. We think the evidence was uncontroverted. And since we also think the overwhelming uncontroverted evidence applies at the fourth prong under Cotton, I think I'd be satisfied that as well. I seem over my time, so I'll yield to the government. Thank you Mr. McBeth. Ms. Tarrin. May it please the court. The government agrees with Sharifi that the district court committed plain error under Apprendi when it imposed a sentence that exceeded 35 years of imprisonment without instructing the jury that it was also required to find that the object of the conspiracy was to murder or kidnap or just to maim. But we disagree that that error is reversible. First, because it wouldn't affect Sharifi's substantial rights. Was it an instructional error or was it an error simply in the verdict form? I believe it was in the instruction, your honor. The verdict form was a general verdict. Yes, your honor. And if you got a general verdict and there are four possible crimes in the statute or three or four, you're automatically messing it up, aren't you? Yes, and we think you need to get special verdicts. And we think that the evidence was overwhelming and uncontroverted that the object of the conspiracy was to murder and it was to murder a specific target and that target was all non-Muslims regardless of where they were. I need to put that on the verdict form. I don't believe. You didn't put it on the verdict form where there was murder. Yes, your honor. That's correct. So we agree that it was plain error, but we think that it didn't affect Sharifi's substantial rights, not only because the evidence. But you say it was invited error. Yes. That you blamed the lawyer on the other side. Yes. So why don't you look in the mirror? We agree, your honor, that if the. Pardon? We agree that if you remanded the case. Did you offer an instruction? No, your honor. To put murder in there? No, you didn't. That's correct. It's just as much the government's fault, if not more, than it is the defendant's fault. And we think. And if you want us to recognize that it's the defendant's fault, you want us to recognize that the defendant got ineffective assistance of counsel. But maybe we take up that on direct appeal without nobody ever talking about it before. There's a Sixth Amendment violation jumps off the page. According to you. Even if this court decides to review that claim, then this court should still affirm the district court sentence because the error didn't affect Sharifi's. Well, if we affirm it, we're affirming a sentence that's eight years in excess of the statutory maximum. But you would be. Are we entitled to do that? Yes, your honor, because. Under prong four. Now, if you, if somebody gets a sentence that's in prong four of Milano, someone gets a sentence of eight years more than the statutory maximum, is that going to look like disrespect of the court system or something? Reflect adversely on the court system. That's what prong four is about, is the court system. The answer to your question. The court system needs to look fair. The answer to your question, your honor, is no, because the sentence would still be the same even if this court vacated. You might have a good argument. You bring in Judge Britz. This guy got convicted of murder later, didn't he? Yes, your honor. And Judge Britz gave him a life sentence. Yes, your honor. And made it consecutive to this. Yes, your honor. As I understand it, it was more even than plain error, but it was invited error on the first claim, because I thought, I understand your argument, they were saying that the lawyer agreed that a life sentence was appropriate. Yes, we asked this court to apply the invited error doctrine on the apprendee error claim. But the other point is, if it's plain error, you have to prepare to accept the fact that you agree with that. You still have to ask whether the substantial rights were affected. And what we're talking about here is a conspiracy to kidnap, murder, or maim. And the evidence seems to me is overwhelming to commit murder. And how many people really have sent people and trained people to go to We're not over here to murder you. The jury would have reflected five seconds on that kind of argument. Terrorists are not over in Kosovo with this kind of planning and this kind of mission in order just to maim somebody. They're over there to kill them. And as I say, that's what that's clearly in light of the evidence. What the jury would have found, they would not, not have taken them long. And so, as I say, this was a 17 day trial. I could not see what error or infringement of substantial rights there was. I don't see any claim here that the defendant was prohibited from putting on the evidence on his behalf that he wanted to put on. He had a chance to make his case over 17 days. And fair enough, he did and the jury ruled against him. And then all we have here is a claim of a prende error based on the mistaken assumption that terrorists would have gone over to Kosovo just to maim someone and then pull back and stop of not committing murder. It doesn't hold up. And the jury, the judge, lawyers, everybody went to a lot of trouble here to provide a fair proceeding. And of course, we have declined to transmute every claim of ineffective assistance of counsel. Some of them may rise to that level, but every case of plain error doesn't amount to ineffective assistance of counsel. Those are not equatable. So, bottom line, this person had a fair trial. He had a chance to put on his evidence. And I cannot see how any injustice was done. We agree, Your Honor, and Sharifi doesn't point to any evidence in the record to indicate that the conspiracy was limited to maiming rather than also to murder, nor does he explain how in the context, as you point out, of a battlefield or a terrorist attack, any such shoot to maim approach would even be possible. Isn't the problem that even if we were to agree that the error was plain with respect to count two, there's a separate count 11 sentence that achieves the same result. So, why does it matter? I agree, Your Honor. That's why we think, one of the reasons why we think that the error didn't affect Sharifi's substantial rights because the sentence would still be the same even if this court vacated the sentence on the count two conspiracy because the district court imposed a sentence of 516 months of imprisonment on the count 11 conspiracy to run concurrently. Can I ask you a question about the first argument that your colleague spent most of his time on? And I understand Mr. McBeth's argument. He doesn't, when I asked him this question, he said this is not what should have happened at the re-hearing. But as I hear him, his point is that this terrorism enhancement so drives the sentence in this case that the judge had to independently consider that because it's a one-size-fits-all and so consider it in isolation, decide that one-size-fits-all isn't appropriate, I think, start from the baseline with that as a assumption and then consider all the other arguments in arriving at a sentence. Is that the way you think the district court had to handle this? No, Your Honor. But even if that were the requirement, that would be satisfied here. And we would recommend that the court look at page 4178 of the appendix where the district court directly responded to Sharifi's terrorism enhancement challenge, which he raised in the context of this broader Eighth Amendment challenge. And there the defendant argued that he wasn't challenging the application of the terrorism enhancement, but just this one-size-fits-all approach of the terrorism enhancement. And the district court explicitly said immediately after he raised that argument, I'm rejecting that argument. And then the district court explained its reason for doing so because it was relying on its factual findings at the initial sentencing hearing with respect to how dangerous this offense was under the particular facts and circumstances of this case. That Sharifi had as a stated goal killing all non-Muslims, and in particular those non-Muslims who were living unjustly in Muslim lands. That he traveled to Kosovo in order to engage in this violent version of jihad that required all of its adherents to kill non-Muslims. He returned to the United States to solicit funds and personnel to support the Mujahideen. He received $15,000 to support the Mujahideen. That he engaged in firearms and other weapons training in order to prepare to wage this informant as a recruit that would have required him to kill all non-Muslims just as the other conspirators. And so the district... He wasn't going to do all this in Kosovo. He was going to blow up Quantico, Marine Base in Virginia, right up the road here. He was going to blow up Fort Bragg. He went on Fort Bragg and he took a scouting trip. Yes, Your Honor, with respect... To try to figure out how to do it down there. Yeah, there's no question that... Plenty of terrorism planning. Judge Wilkinson and I heard this case a long time ago and went through it. Yes, Your Honor. I'm perturbed that you're blaming the other lawyer. And I'm perturbed that you all didn't tell Judge Flanagan about this Apprendi issue when you had this re-sentencing. That it wasn't handled properly and now you're casting blame on the other side. That's what my problem is. I don't understand that. Well, as to the Apprendi error, we think that this court should still affirm the sentence given that it didn't affect... There's no question he's a terrorist. There's no question he got a fair trial. But we had an opinion that's 100 pages long or something reviewing all this stuff after a 17-day trial. Yes, Your Honor, and that's why the district court... And this re-sentencing proceeding was a protracted proceeding, too. I read it all. And Judge Flanagan, I thought, was very, very thorough. And they're nitpicking. The one issue, you're doing a good job with it. You've got a good lawyer against you here. I think the... I also have a concern about your contention that this was an invited error because as I think of invited error, it's the kind of thing where a defense lawyer is doing something because he thinks it advantages his client. And I can't imagine that the lawyer thought that conceding that his client deserved a life sentence was to his client's advantage. He made a mistake. He thought that this was the guideline sentence. It turned out to be wrong, but that's not invited error. That's just an error. But perhaps the advantage would be to inject appellate error into the record, Your Honor. What's the evidence of that? I'm not saying that there's evidence of it, and I'm not suggesting that there is. I'm just saying that that might not be the only basis for an invited error doctrine. Generally. Well, I guess you've got other reasons why it shouldn't matter here, but I wouldn't hang your hat on that. Yes, Your Honor. And this court can review that claim. You don't have to apply the invited error doctrine. But regardless, even if you review the claim, we think that this court should still affirm the judgment because as you pointed out, the sentence would be the same even if this court vacated the sentence on the count two conspiracy because the district court imposed the same sentence on the count 11 conspiracy of 516 months of imprisonment. Do you have anything else? No, Your Honor. For all these reasons, the government respectfully requests that this court affirm the district court sentence. Thank you, Ms. Tarrant. Mr. McBeth. Thank you, Your Honor. Just briefly, I want to sort of clarify, maybe drill down on exactly what I think the error was here and why in the procedural reasonableness issue. And that is that it's one thing to consider a defendant's individual circumstances against the background of a guidelines range that is fundamentally, conceptually sound. It's another thing, a different thing, to recognize that the guidelines range is distorted in an unjustifiable way, adjust the baseline that the guidelines provide, the anchoring point, and then consider a defendant's individual circumstances. What if the district judge just doesn't agree with that premise? And it seems like that's the argument that the government is making, that that's what Judge Flanagan did. She doesn't have to agree. So this is, we're not saying the court had to accept this argument, simply that the court had to consider it. And if it didn't agree with the argument, it does have to explain why. And this court's cases say that, two prompts to that. One, consider the argument. And two, if the court rejects it, explain why. And there's certainly no explanation of why the court thought that our argument about the terrorism enhancement was not a good argument. I mean, the most it says, again, as you mentioned, Your Honor, is that the court imposed a variance. But from the fact that a court imposed a variance, it just doesn't follow that the district court considered each argument that a defendant made. And if the court is going to assume from the fact of a variance that the court considered pretty much every argument that essentially toothless in cases where a defendant, where our district court varies downward. What about the portion of the transcript that your colleague referred to in the context of the Eighth Amendment claim? She says that that's where the, sort of the muddy quote where Judge Flanagan rejected this policy argument out of hand. So that part of the transcript does not talk about a policy argument at all. It talks about a separate claim that Mr. Schrieffe was making, which is that the guideline violates the Eighth Amendment. That is just separate from, distinct from the argument that the enhancement is inconsistent with the 3553A sentencing principles of individualized sentencing. One is about, you know, individual consideration of defendants. The other is a constitutional argument. They're just not the same argument. They appear in separate sections of the defendant's sentencing memorandum under separate headers. They're just not the same thing. And this court has said that it can infer that a district court considered an argument, even if it doesn't explicitly, you know, mention that argument at the time it imposed the sentence, but that if it's going to do that, it has to be, quote, patently obvious from the record that the court considered it. I don't think anything the government has pointed to rises to that level. And, for example, you know, when the court is explaining what it means to be patently obvious, it mentions a situation where the district court imposes a supervised release condition requiring substance abuse. That makes it patently obvious that the court considered the defendant's argument that his substance abuse is a mitigating circumstance. That's the kind of thing that will allow this court to infer. What about the argument that on this record, and I know you may disagree, that it's just patently obvious that the enhancement should apply? Well, I mean, the court, that's essentially, again, assuming that the district court considered an argument that it didn't say anything about. In this court's cases, say, we may not assume, we may not guess that what the district court said has to spell it out. So if the court is going to start assuming that district courts considered arguments that it didn't mention, I mean, that's going to be inconsistent with what the court has said previously. That the district court cannot pass over an argument that's non-frivolous. It has to at least acknowledge it and then explain why. And, again, even if the court, you know, somehow obliquely referenced this argument and acknowledged it at sentencing, it certainly never explained why it thought that our argument about this guideline being non-frivolous. Well, here's my, the point I was trying to make is that some arguments are just not obvious on the record. You make an argument of mitigation about a client's rehabilitative potential or something else that he might have done that isn't easily rebutted in the record. But as I understand the government's argument here is that whatever policy arguments or disagreements there may be about this enhancement, with respect to Mr. Sharifi, there's just no question that the enhancement should apply given, as my colleagues have indicated, you know, all that he did, that a jury found that he did. Right. And, again, we never contested, you know, on this round of sentencing that the enhancement applied by its terms, that we agreed to that. But that really is a different argument from saying it applies. Nevertheless, it throws the guidelines into outer space, as this court put it in McQueen. And so the court should adjust the baseline, not that the enhancement doesn't apply according to its terms, but just that it has an unduly exaggerated effect on the guidelines range. And, therefore, the court should give it less weight, adjust the baseline that the court uses when deciding how to vary based on individual circumstances. All right. Thank you, Mr. McBeth. Thank you. I'm fine. Are you going to come down and greet counsel? Yeah, tell him to come on up. All right. We're going to come down and greet counsel and then move on to our second case.
judges: Albert Diaz, J. Harvie Wilkinson III, Robert B. King